# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

HARRY R. SMITH,
      Petitioner,

vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:14-cv-677

Black, J.
Bowman, M.J.

**REPORT AND**
**RECOMMENDATION**

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution (CCI) in Chillicothe, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 3). This matter is before the Court on respondent's motion to dismiss (Doc. 18), which petitioner opposes. (*See* Doc. 31).[1]

## I. PROCEDURAL HISTORY

### A. State Proceedings

1. **Trial Proceedings: June-August 2009**

On June 2, 2009, the Highland County, Ohio, grand jury returned an indictment charging petitioner with one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of Ohio Rev. Code § 2925.041; one count of possession of methamphetamine

---

[1] Respondent has also separately filed 92 exhibits obtained from the underlying state-court record as support for the motion to dismiss. (*See* Doc. 16-17). Moreover, petitioner has filed numerous non-dispositive motions (*see* Docs. 7, 8, 13, 20, 22, 25, 27, 32), as well as a motion for reconsideration of an Order issued by the undersigned on May 11, 2015. (*See* Docs. 28, 29). Petitioner's pending motions are addressed in a separate Order issued this date. The record considered herein in addressing the respondent's motion to dismiss includes not only respondent's exhibits, but also the exhibits that the undersigned has allowed petitioner to add to the record as set forth in the separate Order issued this date.

in violation of Ohio Rev. Code § 2925.11; one count of trafficking in drugs in violation of Ohio

Rev. Code § 2925.03; and one count of tampering with evidence in violation of Ohio Rev. Code §

2921.12(A).  (Doc. 16, Ex. 1).  The facts giving rise to the charges were summarized as follows

by the Ohio Court of Appeals, Fourth Appellate District, based on evidence presented at

petitioner's trial:[2]

> On May 14, 2009, detectives Richard Warner and Dan Croy received information
> that illegal activity might be in progress at room 136 of the Greystone Motel.
> Pursuant to this information, Croy and Warner conducted surveillance of the
> Greystone Motel.  They observed a large amount of foot traffic into and out of
> room 136.  After three hours of surveillance, Croy and Warner went off duty, and
> Croy told Lieutenant Stephen Alexander that Croy suspected illegal activities may
> be taking place at room 136 of the Greystone Motel.
>
> Sometime around 4:30 in the morning of May 15, 2009, Alexander and Deputy
> Hughes (another Highland County Sheriff's Officer) drove past the Greystone
> Motel.  They observed a woman leave room 136 and enter a vehicle.  As the
> vehicle departed, Alexander and Hughes noticed that the vehicle had a broken rear
> brake light.
>
> Smith was in the hotel room along with his daughter, Abby Smith, his son, Wesley
> Smith, and another friend, Christopher Magee.  When Alexander and Hughes
> started following the departing vehicle, Abby noticed and alerted the other
> occupants.  The occupants then proceeded to attempt to destroy or otherwise
> remove evidence from the hotel room.
>
> The police then stopped the vehicle on the basis of the broken rear brake light.
> There were two occupants in the vehicle.  [James] Clark, a male, was in the front

---

[2] The Ohio appellate court summarized the facts in its direct appeal decision filed September 20, 2010.  (*See*
Doc. 16, Ex. 35).  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue
made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and
convincing evidence."  Petitioner has submitted a plethora of documents in an attempt to challenge the veracity of the
evidence that was introduced against him at trial and to support his theory that the police, State witnesses, the
prosecution, his trial and appellate counsel, and the state trial and appellate courts were all involved in a conspiracy
against him.  However, upon review of the entire record, the undersigned finds that petitioner has not provided clear
and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below.  Nor does the record
support petitioner's conspiracy claim.  Therefore, the appellate court's findings are presumed to be correct.  *See
McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

2

passenger's seat.  Miranda Johnson, the driver, was the female the police had earlier seen leaving the hotel room.  In the course of the traffic stop, Alexander found a plastic waterproof container that contained three baggies of white powder on Clark's person.  Later, at trial, the State's chemical expert testified that this white powder was methamphetamine.

Alexander and Hughes then proceeded to room 136 of the Greystone Motel to confront the occupants.  Alexander knocked on the door and identified himself.  Smith refused to sign the consent form to allow the police to search the hotel room.  Alexander and Hughes then ordered the occupants out of the room, and Alexander called detective Croy updating him on recent events and asked him to procure a search warrant for room 136 of the Greystone Motel.

Within a couple of hours, the police obtained a warrant and proceeded to search the hotel room.  The police discovered aluminum foil and methamphetamine in the toilet of the room.  They also discovered three sets of scales and numerous plastic bags, some with corners cut out.  Finally, a short distance away, the police discovered a bag wrapped in a t-shirt that contained lithium batteries and pseudoephedrine-based cold medicine.

(*Id.*, Ex. 35, pp. 3-4, at PAGEID#: 922-23).

Prior to trial, petitioner's counsel from the Ohio Public Defender's Office filed a motion in limine requesting that the State be prohibited from introducing "any evidence of other alleged misconduct involving criminal convictions or alleged criminal conduct for which the defendant is not indicted."  (*Id.*, Ex. 3).  Petitioner's counsel also apparently filed a motion for inspection of the grand jury transcript, as well as a motion to suppress evidence obtained during the search of the hotel room.  (*See id.*, Exs. 5, 6).  In an order entered July 27, 2009, the trial court granted the motion in limine and denied the motion to inspect grand jury testimony prior to trial.  (*Id.*, Ex. 5).  In denying the motion for inspection of the grand jury transcript, the court reasoned that petitioner's "belief that some witnesses may have given inconsistent statements" did not "constitute a 'particularized need'"; that the State had "indicated that only one witness, Detective

3

Richard Warner[,] testified before the Grand Jury"; and that it would "conduct an in camera inspection of the testimony at the conclusion of Detective Warner's testimony in the case in chief if requested by the Defendant pursuant to Criminal Rule 16(b)(1)(g)." (*Id.*, at PAGEID#: 686). The court also expressly found that the State had complied with the defense's discovery requests "with one possible exception, the issue of whether the City Law Director made any 'deals' with A[bb]y Smith regarding a misdemeanor case in the Hillsboro Municipal Court in exchange for her testimony against the Defendant." (*Id.*). The State was ordered to "ascertain this and provide the response to the Defendant by July 31st." (*Id.*). Following an evidentiary hearing held on July 27 and August 3, 2009, the trial court overruled petitioner's suppression motion. (*Id.*, Ex. 7).

In August 2009, the State filed a motion to amend the indictment to correct an error, claimed to be "typographical in nature," by changing the trafficking charge to aggravated trafficking in drugs given that the count specifically provided that the "Schedule II drug, Methamphetamine, was being prepared for distribution, etc. in the vicinity of a juvenile." (*Id.*, Ex. 8). The court allowed the amendment over objection by the defense. (*See id.*, Exs. 10, 11).

The matter then proceeded to trial before a jury, which found petitioner guilty as charged. (*Id.*, Exs. 12-13). On August 12, 2009, the trial court issued a judgment entry sentencing petitioner to an aggregate prison term of sixteen (16) years, which consisted of consecutive sentences of five (5) years for the illegal assembly, aggravated drug trafficking and evidence tampering offenses and one (1) year for the methamphetamine possession offense. (*Id.*, Ex. 14). A "nunc pro tunc" entry was filed on August 28, 2009

4

to reflect, as requested by petitioner, the Ohio Revised Code provisions forming the basis

for each criminal offense.  (*See id.*, Exs. 15-16).

> 2. **Direct Appeal (Case No. 09CA29)/Remand Proceeding:  September 2009-March 15, 2011**

Petitioner's trial counsel filed a timely notice of appeal on petitioner's behalf to the Ohio

Court of Appeals, Fourth Appellate District.  (Doc. 16, Ex. 17).  A new attorney, who was

appointed by the court to represent petitioner on appeal (*see id.*, at PAGEID#: 752), filed a brief

on petitioner's behalf in March 2010 raising the following assignments of error:

> 1. The State of Ohio Failed to Prove All the Essential Elements of Tampering With Evidence and Illegal Assembly or Possession of Chemicals for the Manufacturing of Drugs, Making the Conviction for Said Charges Against the Weight of the Evidence.
>
> 2. Ohio Revised Code Section 2925.041 is vague and over broad and violates both the due process and equal protection provisions of the constitutions of the United States and the State of Ohio.
>
> 3. Prosecutorial Misconduct Improperly Influenced the Jury and Prejudiced the Appellant's Right to a Fair Trial
>
> 4. The Trial Court Erred in Allowing the State of Ohio to Amend the Trafficking in Drugs From a Felony of the 4th Degree to Aggravated Trafficking in Drugs a Felony of the 3rd Degree Without Review by A Grand Jury.
>
> 5. The Trial Court Erred in Failing to Suppress the Evidence Found in Room 136 at the Greystone Motel and on the Person of Harry Smith.
>
> 6. The Defendant[']s Right to Due Process and Equal Protection Guaranteed Under the Constitutions of the State of Ohio and the United States Was Violated by the Trial Court.

(*Id.*, Ex. 18).

Thereafter, petitioner filed *pro se* motions with the Ohio Court of Appeals requesting

leave to file a 29-page *pro se* supplemental brief and to supplement the record with additional

5

information, which were denied by a magistrate.  (*Id.*, Exs. 21-23).  Petitioner filed objections to

the magistrate's order and requested that his *pro se* motions be reconsidered.  (*Id.*, Ex. 24).  In that

pleading, petitioner contended that he had timely filed his 29-page *pro se* supplemental brief with

the Ohio Court of Appeals in March 2010 to "preserve[] claims that my trial counsel and

appellate counsel failed to raise."  (*Id.*, at PAGEID#: 837, 839).  Petitioner asserted that the

supplemental brief "rais[ed] a number of assignments of error[], all which pertain to the

ineffectiveness of his trial attorney(s), who acted in complicity with Highland County Officials."

(*Id.*, at PAGEID#: 837-38).  Petitioner stated that those additional claims were based on the

following specific instances of error by his trial counsel:

> (1) Not raising viable claims on the record, preserving those issues for direct
> appeal review; (2) Not challenging the search warrant based on the fact that the
> search warrant is the product of knowingly made false statements. . .; (3)
> failing to conduct an investigation into the case; (4) Failing to raise objections;
> (5) Failing to subpoena witnesses; (6) Failing to subpoena recorded interviews,
> conducted by Highland County Police . . ., pertaining to interviews and
> interrogations that the police conducted on Abby Smith; Chris Magee; James
> Clark; Wesley Smith; and Michelle Kelly.  The narratives, which were
> transcribed by the Ohio Public Defender[']s Office, have recently been
> g[i]ve[n] to this Appellant, and which were in the possession of the two
> attorney(s) that represented me at trial; however the attorney(s) failed to bring
> this evidence onto the record, at trial; even though, this evidence was
> impeachment evidence; and exculpatory.  My attorney(s) failed to assert the
> Fruits of the Poisonous Tree Doctrine; My trial attorney(s) failed to file a
> Motion To Dismiss, based on the unconstitutionality of the Illegal Assembly
> Statute.

(*Id.*, at PAGEID#: 838).  On June 14, 2010, the Ohio Court of Appeals overruled petitioner's

objections to the magistrate's order and denied his *pro se* motions, reasoning in pertinent part as

follows:

> Smith has not called any obvious errors in the Magistrate's Order to our attention.
> He is attempting to file a supplemental pro se [brief] after briefing has already

6

> been completed in this case. Further, neither the United States nor the Ohio
> Constitution mandate[s] a hybrid representation allowing a pro se appellant with
> appointed counsel to file briefs in addition to those filed by his counsel. . . .
> Therefore, the Magistrate correctly denied Smith's request to file a pro se
> supplemental brief.

(*Id.*, Ex. 28, p. 2, at PAGEID#: 858).[3]

A few months later, on September 20, 2010, the Ohio Court of Appeals issued a Decision and Judgment Entry addressing the six assignments of error set forth in the brief filed by petitioner's appellate counsel. (*See id.*, Ex. 35). The court affirmed in part and reversed in part the trial court's judgment as follows: (1) the court sustained the assignment of error challenging the amendment to the indictment and vacated petitioner's conviction for aggravated trafficking of drugs in the vicinity of a juvenile; and (2) the court overruled the remaining assignments of error and affirmed petitioner's convictions on the three counts of illegal assembly, methamphetamine possession and tampering with evidence. (*Id.*).

On December 17, 2010, three months after the issuance of the direct appeal decision, petitioner filed a *pro se* motion with the Ohio Court of Appeals, requesting a 60-day extension of time in which to file an application under Ohio R. App. P. 26(B) for reopening of the appeal based on a claim of ineffective assistance by appellate counsel for failing to file "an APPROPRIATE, MEANINGFUL & EFFECTIVE APPEAL BRIEF." (*Id.*, Ex. 40) (emphasis in original). The motion was granted to the extent that petitioner was granted an extension to

---

[3] Petitioner filed another motion for reconsideration disputing the appellate court's June 14, 2010 order. (*See* Doc. 16, Ex. 29). That motion was denied by a magistrate on June 28, 2010 on the ground that "neither the Ohio Rules of Appellate Procedure nor the local rules of this court provide for the filing of multiple motions for reconsideration." (*Id.*, Ex. 30). Petitioner pursued an appeal to the Ohio Supreme Court from the appellate court's decisions prohibiting him from filing *pro se* pleadings and supplementing the record in the direct appeal proceeding. (*See id.*, Exs. 31-32). On October 13, 2010, the Ohio Supreme Court declined jurisdiction to hear the case. (*Id.*, Ex. 33).

January 26, 2011 in which file an application to reopen his appeal.  (*Id.*, Ex. 41).  Petitioner did

not file any reopening application by the deadline date.

Thereafter, on March 14, 2011, following an unsuccessful appeal to the Ohio Supreme

Court from the Ohio Court of Appeals' ruling in petitioner's favor (*see id.*, Exs. 36-38), the State

filed a motion with the trial court requesting that the aggravated drug trafficking charge be

dismissed in accordance with the Ohio Court of Appeals' direct appeal decision.  (*Id.*, Ex. 42).

On March 15, 2011, the trial court dismissed the charge and vacated petitioner's five-year

sentence for aggravated drug trafficking, thereby reducing petitioner's aggregate prison term from

sixteen to eleven (11) years.  (*Id.*, Ex. 43; *see also* Doc. 17, Ex. 92).[4]  It appears from the record

that no appeal was taken from the March 15, 2011 resentencing entry.

3. **Post-Conviction Petition/Appeal (Case No. 10CA12):  June 20, 2010-March 9, 2011**

On June 10, 2010, while his direct appeal was pending before the Ohio Court of Appeals,

petitioner filed a *pro se* petition for post-conviction relief with the trial court.  (Doc. 16, Ex. 44).

In the petition, petitioner asserted the following "constitutional claim[s]":

1.  Ineffective assistance of counsel. . . .  Court appointed attorn[ey]s intentionally and recklessly misrepresented me!!!

2.  Ineffective assistance of counsel; Biased and prejudice[d] trial judge…. Counsel[']s intentional and reckless misrepresentation and trial judge denying right to confrontation of witnesses and challenge invalid warrant.

3.  Ineffective assistance of counsel. . . .  Attorn[ey]s intentionally and recklessly misrepresented me and were highly incompetent.  Failed to object and raise vital issues.

---

[4] It is noted that the resentencing entry issued on March 15, 2011 referred to a sentence of "eleven years, six months."  (*See* Doc. 16, Ex. 43).  However, on January 15, 2015, the trial court issued a "nunc pro tunc" entry correcting the sentence calculation error.  (*See* Doc. 17, Ex. 92).

8

4. Ineffective assistance of counsel; Judges violated their neutral and detached duties; Attorn[ey]s acted in complicity with courts. . . . Attorn[ey]s withheld evidence which proved judge[']s complicity with police and prosecution.

5. Prosecutorial misconduct – use of known false evidence and testimony; Attorn[ey]s['] complicity to these acts and their failure to object.

6. Attorn[ey]s['] failure to subpoena witnesses and documents/evidence, attorn[ey]s['] failure to object, attorn[ey]s['] failure to confront witnesses.

(*Id.*).  Petitioner stated in the petition that he was attaching 60 exhibits as evidentiary support and indicated that the petition would be supplemented by the affidavits of Wesley and Abby Smith and transcripts of proceedings that occurred on May 15 and July 16, 2009 with respect to those individuals.  (*See id.*, at PAGEID#: 1016-21).  Petitioner also filed a motion for the expert assistance of a forensic "lab tech" in order to establish by way of additional finger-print and DNA testing that items found outside the hotel room in the woods (*i.e.*, a cell phone, "drug smoking pipe," a "pill cutter," and a rolling machine and "paper pack") neither belonged to nor were taken to the woods by petitioner or petitioner's son.  (*Id.*, at PAGEID#: 1023-24).

On August 13, 2010, the trial court denied petitioner's petition for post-conviction relief. (*Id.*, Ex. 46).  In ruling on the petition, the court made the following pertinent findings of fact:

7. The first claim for relief alleges that his trial counsel was ineffective in that they failed to file a proper motion to suppress due to lack of probable cause, false statements and stale information.  The record in this case demonstrates that there was a motion filed challenging the probable cause for the warrant which was ruled upon by the court.   There was no affidavit filed nor motion filed alleging that specific portions of the affidavit filed in support of the motion were false or made with reckless disregard for the truth of the statements.

8. Defendant alleges in his memorandum in support of his petition that numerous false statements were made during and prior to trial.  However, other than his own allegations, he provides no evidence in the exhibits submitted with his

9

petition that any of the statements made in the affidavit in support of the search warrant were false or made with reckless disregard for the truth of the statements therein.

9. Defendant alleges in his second claim that his attorneys were ineffective for failing to subpoena witnesses at trial and the trial judge's "interference with" his ability to present claims and refusing to entertain verbal motions. These relate to his own perceptions of the law and his desire to raise matters that his trial counsel did not raise. The record is clear that the trial judge's "interference" was simply making rulings on legal issues. The trial judge made it clear that the Defendant could not file his own written motions as he had attorneys to do so. It was made clear to him at his arraignment that if he wanted to file motions and represent himself that he could do so, but he would not be permitted to file motions in addition to those filed by his counsel.

10. The references to pushing the "mute" button in the transcript w[ere] made to let counsel prevent consultations with their client at the table not be recorded by the audio recording system since they were privileged conversations.

11. Defendant alleges in his memorandum that there was false testimony given at trial, but failed to attach any exhibits or affidavits from any other persons that support his claims.

(*Id.*, at PAGEID#: 1032-33). The court then went on to conclude as a matter of law that petitioner's claims were (1) "barred by res judicata for the reason that [petitioner] could have raised these claims, or actually has raised them in his direct appeal to the Fourth District Court of Appeals"; and (2) in any event, the information submitted by petitioner failed to "demonstrate any substantive grounds for relief" given that no affidavits were attached to the petition, petitioner's "own uncorroborated allegations" were insufficient to support his claims, and other submitted information did "not constitute evidence that supports his claims for relief." (*Id.*, at PAGEID#: 1033-34).

Petitioner filed a timely notice of appeal to the Ohio Court of Appeals, Fourth Appellate District. (*Id.*, Ex. 47). However, on February 28, 2011, the Ohio Court of Appeals *sua sponte*

10

dismissed the appeal, numbered 10CA12, for lack of prosecution due to petitioner's failure to comply with an order issued February 11, 2011 requiring petitioner "to file a motion showing good cause for extending the time for filing a brief along with the brief itself." (*Id.*, Ex. 48). On March 9, 2011, the Ohio Court of Appeals issued another "nunc pro tunc" entry to correct a date in the February 28, 2011 order and to add the names of the two appellate court judges who concurred in that decision. (*Id.*, Ex. 49).

4. **Later Attempts To Obtain Appellate Court Review Of Conviction/Sentence: March 21, 2013-May 28, 2014**

Petitioner did not take any further action in the state courts following his resentencing on March 15, 2011, until over two years later when he began to file numerous *pro se* pleadings, discussed below in chronological order, in an attempt to obtain the appellate courts' review of his conviction and sentence in the direct appeal (Case No. 09CA29) and post-conviction appeal (Case No. 10CA12) proceedings and by way of a delayed appeal to the Ohio Supreme Court (Case No. 13-2036).

**(a) March 2013 Motion To Reconsider Direct Appeal Decision In Case No. 09CA29.**

The first such pleading was filed by petitioner on March 21, 2013 with the Ohio Court of Appeals, Fourth Appellate District, in the direct review proceeding (Case No. 09CA29). (Doc. 16, Ex. 69). In that motion, petitioner requested reconsideration of the direct appeal decision, a rehearing en banc, and an enlargement of time. (*Id.*). Specifically, petitioner sought reconsideration of his claim challenging the constitutionality of the search of the Greystone hotel room. (*See id.*). On March 28, 2013, a magistrate denied petitioner's motion without opinion. (*Id.*, Ex. 70).

11

On April 10, 2013, petitioner filed a motion objecting to the magistrate's order and requesting that it be stricken. (*Id.*, Ex. 71). On May 20, 2013, the Ohio Court of Appeals denied petitioner's motion, reasoning in pertinent part as follows:

> App.R. 26(A), provides that an "[a]pplication for reconsideration of any cause or motion submitted on appeal *shall be made in writing before the judgment or order of the court has been approved by the court and filed by the court with the clerk for journalization or within ten days after the announcement of the court's decision, whichever is later.\*\*\**" (Emphasis added). A motion for en banc consideration is subject to the same timing requirement. App.R. 26(A)(2)(c).
>
> Here, Smith filed his motions for reconsideration and rehearing en banc over two and a half years after we announced our decision. Therefore, Smith's motions are clearly untimely. And, although App.R. 14(B) permits this Court to enlarge the time for filing an application for reconsideration and for en banc consideration pursuant to App.R. 26(A), App.R. 14(B) states that such enlargement of time "shall not be granted except on showing of extraordinary circumstances." Although Smith cited to App.R. 14(B) in the caption of his original motion, he cited no reasons for the delay in filing his motions much less a showing of extraordinary circumstances justifying his lengthy delay.

(*Id.*, Ex. 72) (emphasis in original).[5]

On June 3, 2013, petitioner filed a motion to certify conflict with the Ohio Court of Appeals, arguing that the court's denial of his motion for reconsideration without addressing the merits of the motion conflicted with the court's own decisions as well as well as decisions issued by other Ohio courts. (*Id.*, Ex. 75). The Ohio Court of Appeals denied the motion in an entry filed October 3, 2013. (*See id.*, Ex. 76, at PAGEID#: 1693). On October 21, 2013, petitioner filed a motion for reconsideration, requesting in part that the denial of his motion to certify

---

[5] It is noted that on June 7, 2013, petitioner filed a motion with the Ohio Supreme Court requesting that "judicial notice" be taken of the Ohio Court of Appeals' "Fraudulent & Illegal ruling and statements" in its May 20, 2013 decision. (Doc. 16, Ex. 72, at PAGEID#: 1591). On September 4, 2013, the Ohio Supreme Court denied the motion without opinion. (*Id.*, Ex. 74).

conflict be reconsidered.  (*Id.*, Ex. 77).  On November 12, 2013, the Ohio Court of Appeals

denied that motion on the ground that it was untimely.  (*Id.*, Ex. 78).

On December 26, 2013, petitioner filed a *pro se* notice of appeal and memorandum in

support of jurisdiction to the Ohio Supreme Court.  (*Id.*, Exs. 79-80).  In the appeal, numbered 13-

2035, petitioner asserted the following proposition of law:

> Whether the appellate court is allowed to violate an appellant's U.S. & Ohio
> constitutional rights by making erroneous rulings in a decision which
> also contradicts the appeal court[']s very own precedent case laws and then refuse to
> rule on the merits of an appellant's motion to reconsider and hold an en banc
> hearing when the motion to reconsider is untimely, although the motion presents
> obvious errors, extraordinary circumstances and sufficient importance, thus
> continually showing severe prejudice and bias to an appellant?

(*Id.*, Ex. 80, at PAGEID#: 1709).  On March 26, 2014, the Ohio Supreme Court declined to

accept jurisdiction of the appeal.  (Id., Ex. 82).

**(b) June 2013 Motions To Waive Bars To Review in Case Nos. 09CA29 and 10CA12 And To
Reopen Appeal In Case No. 09CA29.**

On June 3, 2013, petitioner filed a motion with the Ohio Court of Appeals, Fourth

Appellate District, entitled "Motion For Good Cause To Waive Any/All Time Bars And

Procedural Default."  (Doc. 16, Ex. 50).  In that motion, petitioner requested that his direct appeal

(Case No. 09CA29) be reopened and permission to file an appellate brief in Case No. 10CA12

based on a showing of "good cause" that he was "unavoidably prevented" from meeting filing

deadlines in the two proceedings.  (*Id.*).  Petitioner claimed that he could not meet those deadlines

due to various actions by prison staff beginning in September 2010 when he was incarcerated at

Pickaway Correctional Institution (PCI) and thereafter at Lebanon Correctional Institution (LeCI),

which deprived him of adequate access to the prison law library and legal materials.  (*See id.*, at

13

PAGEID#: 1045-58).  Petitioner contended that he was "able to begin working on [his] legal pleadings and case" when he was transferred to CCI and his security classification was lowered as a result of a state senator's order to the Ohio Department of Rehabilitation and Correction to investigate his case.  (*Id.*, at PAGEID#: 1058).  Petitioner stated that his "security was lowered" at LeCI on September 27, 2012 and that he was transferred to CCI on January 29, 2013.  (*Id.*, at PAGEID#: 1080).

On June 11, 2013, petitioner also filed a separate application to reopen his appeal and appoint new counsel in Case No. 09CA29 in order to raise claims of ineffective assistance by his counsel on direct appeal.  (*Id.*, Ex. 83).

It appears from the record that in Case No. 09CA29, the Ohio Court of Appeals denied petitioner's motions on October 3, 2013.  (*See id.*, Ex. 77, at PAGEID#: 1700-02; Ex. 91, at PAGEID#: 2120).  Petitioner filed a motion for reconsideration, which was denied as untimely on November 12, 2013.  (*Id.*, Exs. 77-78).[6]  In a later entry filed on February 14, 2014, the Ohio Court of Appeals clarified the October 3, 2013 decision by expressly stating that petitioner's application to reopen his appeal was denied.  (*Id.*, Ex. 84).  In so ruling, the court reasoned in pertinent part:

> An application for reopening must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."  App.R. 26(B)(1).  Here, Smith did not file his application until **two and a half years** after the journalization of the appellate judgment.  Although Smith filed a separate motion arguing that he was "unavoidably prevented" from meeting various filing deadlines due to the conduct of correctional institution staff, we

---

[6] It appears from the record that petitioner filed a motion to take judicial notice, which was construed as a motion for reconsideration of the November 12, 2013 entry.  (*See* Doc. 16, Ex. 85).  On March 31, 2014, the Ohio Court of Appeals denied the motion and informed petitioner, in accordance with his request, of the status of his other motions, which had all been denied.  (*Id.*).

14

> denied that motion on October 3, 2013.  We conclude that Smith has not shown
> good cause for the lengthy delay in filing his application.

(*Id.*, at PAGEID#: 1969) (emphasis in original).

On March 6, 2014, petitioner filed a *pro se* notice of appeal to the Ohio Supreme Court

from the Ohio Court of Appeals' February 14, 2014 entry in Case No. 09CA29.  (*Id.*, Ex. 86).  In

that appeal, numbered 14-0337, petitioner asserted the following propositions of law in his

memorandum in support of jurisdiction:

1. The appellate court ignored evidence of retaliation, large periods of time in
   isolation, denial of grievance process, filing of false conduct reports, denial of
   access to the courts and law library perpetrated by prison officials against
   appellant, which violated his right to access to the courts and cruel and unusual
   punishment, due process and equal protection to the law. . . .

2. The appellate court purposely ignored genuine and colorable claims of
   ineffective assistance of appellate counsel and counsel[']s failure to raise and
   show ineffective assistance of trial counsel, abuse of discretions, prosecutorial
   and police misconduct and violations of neutral and detached duties of judges
   and more. . . .

(*Id.*, Ex. 87).  On May 28, 2014, the Ohio Supreme Court declined to accept jurisdiction of the

appeal.  (*Id.*, Ex. 88; Ex. 91, at PAGEID#: 2140).

In Case No. 10CA12, a magistrate issued an order on July 29, 2013 denying petitioner's

request to file an appellate brief as moot because the "appeal was dismissed on February 28,

2011."  (*Id.*, Ex. 51).  Petitioner filed a motion for reconsideration, which was denied by the

magistrate on August 23, 2013.  (*Id.*, Exs. 52-53).  In the meantime, on August 20, 2013,

petitioner filed an appellate brief raising seven assignments of error challenging the trial court's

denial of his post-conviction petition.  (*Id.*, Ex. 57).  He also apparently filed a motion to "waive

copies and [for permission] to file only one copy of his brief."  (*See id.*, Ex. 56).  The State

responded to those submissions by filing a motion to dismiss the appeal.  (*See id.*, Ex. 54).  On

August 29, 2013, the magistrate denied petitioner's motion to waive copies and for permission to

file one copy of his brief as moot on the ground that "this appeal was dismissed on February 28,

2011."  (*Id.*, Ex. 56).  On September 6, 2013, the magistrate also denied the State's motion to

dismiss as moot based on the same ground.  (*Id.*, Ex. 55).

Petitioner filed two motions objecting to the magistrate's July 29, 2013, August 23, 2013

and August 29, 2013 orders in Case No. 10CA12.  (*Id.*, Exs. 58-59).  On September 27, 2013, the

Ohio Court of Appeals denied the motions, as well as petitioner's "voluminous motion for good

cause to waive any/all time bars and procedural default."  (*Id.*, Ex. 61).  On October 11, 2013,

petitioner filed a motion for reconsideration, which was denied as untimely on November 5, 2013.

(*Id.*, Exs. 62-63).  Petitioner next filed a motion requesting that "judicial notice" be taken that the

court clerk had "caused the failure to file the appellant's motion [for reconsideration] in a timely

manner."  (*Id.*, Ex. 64).  The magistrate denied that motion on November 29, 2013.  (*Id.*, Ex. 65).

On December 27, 2013, petitioner filed a *pro se* notice of appeal to the Ohio Supreme

Court from the trial court's denial of his post-conviction petition on August 13, 2010 and the Ohio

Court of Appeals' November 5, 2013 entry in Case No. 10CA12 denying his motion for

reconsideration.  (*Id.*, Ex. 66).  In that appeal, numbered 13-2044, petitioner asserted the

following claim as the sole proposition of law:

> When an appellate court is presented with motions supported with factual evidence
> and arguments that are supported by relevant case laws that an appellant has been
> unavoidably prevented from meeting his filing deadline and presents court with
> other evidence of ineffective assistance of counsel, prosecutorial misconduct,
> judicial bias and prejudice, police corruption, e[tc]., and the court refuses to rule on
> said motions and filings and the merits of the appellant's claims, then the court has
> abused its discretion, oath of office and both the U.S. & Ohio Constitutions. . . .

16

(*Id.*, Ex. 67). On March 26, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.*, Ex. 68; Ex. 91, at PAGEID#: 2138).

**(c) December 2013 Motion For Delayed Appeal To Ohio Supreme Court: Case No. 13-2036.**

On December 26, 2013, petitioner filed a *pro se* motion with the Ohio Supreme Court requesting leave to file a delayed appeal from the following decisions by the Ohio Court of Appeals in Case No. 09CA29: the September 20, 2010 direct appeal decision and decisions filed on March 28, 2013 and May 20, 2013 denying his motion for reconsideration of the direct appeal decision. (Doc. 16, Ex. 89). In the Ohio Supreme Court case, which was numbered 13-2036, petitioner asserted essentially the same arguments to justify his delay in filing that he had presented to the Ohio Court of Appeals in his 2013 pleadings filed in Case Nos. 09CA29 and 10CA12. (*See id.*). On February 19, 2014, the Ohio Supreme Court issued an Entry denying petitioner's motion for delayed appeal and dismissing the matter without opinion. (*Id.*, Ex. 90).

**B. Federal Habeas Corpus Petition**

Petitioner commenced the instant habeas action on August 25, 2014, when he filed an application for leave to proceed *in forma pauperis* together with his petition for habeas corpus relief. (*See* Doc. 1).[7] In the petition, petitioner asserts the following grounds for relief, which are quoted verbatim from his *pro se* pleading:

> **Ground One:** Issuing judge of search warrant was not neutral and detached and a rubber stamp for police due to being involved in a conspiracy with detectives of

---

[7] It is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Here, it appears that petitioner submitted his pleadings, dated August 25, 2014, to prison officials on the same date that they were filed with the Court. (*See* Doc. 1, at PAGEID#: 7, 174-75).

Sheriff Dept. to set-up and frame petitioner.

**Ground Two:** 4th Amendment to the U.S. Constitution violated by illegal and unlawful search and seizure.  Search warrant affidavit was based and founded on false information and total disregard to the truth and meant to mislead.

**Ground Three:** Ineffective Assistance of Counsel. . . .  My trial appointed counsels deliberately sabotaged my case, acted in complicity and conspiracy with the State and police and several judges in Hillsboro, Ohio.  They (attorneys) failed to investigate my case, subpoena witnesses, preserve a record, file meaningful and appropriate motions in my defense, failed to object to the State[']s false testimonies, evidence and presentations, failed to object to trial court[']s abuse of discretions, failed to object to trial court[']s advocation for the State and police, failed to present exculpatory evidence to the record, failed to effectively represent me, severely prejudiced me and my case and many other violations. . . .

**Ground Four:** Trial court violated my right to confront witnesses against me, thus violating the Confrontation Clause of the U.S. Constitution.

**Ground Five:** The issuing judge of search warrant, Judge David McKenna and trial judge, Rocky Coss, both were severely prejudice[d] and biased during the entire trial process of mine; both advocated for the police and State; both personally embr[oi]led themselves in my case; both prejudiced me and my case; both violated my due process and equal protection of law and violated both my Ohio and U.S. constitutional rights and liberty. . . .

**Ground Six:** Trial court (Rocky Coss), the Clerk of Courts (Paulette Donely) and trial appointed counsel (Gregory Meyers) all were in a conspiracy to deny me access to the courts and record, thus denying me the right to preserve issues, arguments and unalienable rights to defend myself, preserve a record and be afforded effective assistance of counsel.  Also, the Fourth Appellate District was involved.

**Ground Seven:** Prosecutorial Misconduct and Malicious Prosecution:  The State, Anneka Collins and David Henry presented false testimonies and evidence to the jury and record by and through their witnesses, Lt. Alexander, Det.s Croy & Warner, Chris Magee, James Clark, and Abby Smith.  These bad acts were committed through out the entire trial process.  Both Collins and Henry (prosecutors) themselves committed perjury, fraud and crimes through out the trial process.  Both prosecutors knowingly allowed false testimony and deliberately failed to correct it and allowed manufactured evidence and other information, which proved the police and witnesses lied and manufactured evidence to be kept from the record so to ensure their witnesses['] perjuries and tampering with

evidence were secure and left unseen and unheard in order to secure the illegal and unlawful conviction and win at any cost. . . .

**Ground Eight:**  Ineffective Assistance of Appellate Counsel:  Court appointed appellate counsel, William Jeffrey Moore, who also was appointed by Judge Rocky Coss, deliberately & intentionally failed and refused to file a meaningful and effective assignment of error regarding the 4th Amend. issue in my case, and other vital issues. . . .

**Ground Nine:**  The indictment is fraudulent & defective & founded on no evidence of wrong doing on my behalf, perjury and false evidence by the State, police and their witnesses.  The indictment was premised and founded on crimes not committed by me and for which I am innocent of. . . .

**Ground Ten:**  This case is one filled with plain and structural errors, and even harmless errors of abundance, thus the cumulative effect is dev[a]stating and mandated reversal on all the grounds within and presented to the state courts, which have not been ruled on (merits and issues) is grounds for dismissal of case. The entire case was premised, founded and created on false testimony, false evidence, conspiracies by the police, State, trial appointed counsels and three different courts of juvenile, municipal and common pleas, of Highland County. Evidence was manufactured by the police within the motelroom and after.  The State presented lies, illusions and false evidence to the juries (petite and grand) and withheld exculpatory evidence from them.  This case beg[a]n months prior to the illegal and unlawful acts of the police on May 15, 2009, due to the v[i]ndictiveness and selective acts of the Det.s in this case, which proceeded to Judge David McKenna (Hillsboro Municipal Court) who released my daughter, Abby Smith, from jail at the request of the detectives for Abby to work for them (McKenna and Det.s, Croy, Warner and Alexander) to set-up and frame me. . . .

**Ground Eleven:**  This case, once all pro-se filings [are] reviewed and all evidence which de hors the record is reviewed will clearly show this case is against the "manifest weight of evidence.". . .

**Ground Twelve:**  This case is clearly one of "insufficient evidence," thus a sufficiency of evidence violation. . . .

**Ground Thirteen:**  I was unavoidably prevented from meeting my filing deadlines timely due to the act of retaliation by prison officials for exercising my constitutional right to file informal complaints/grievances. . . .   In addition, I was denied access to the law library and courts which I filed numerous complaints against. . . .

**Ground Fourteen:**  The Fourth Appellate District Court made opinions to issues in my direct appeal which is contrary to law and erroneous.  This issue in itself is a difficult one due to the ineffective assistance of trial and appellate counsel.  Both counsel's deliberate ineffectiveness for failing to preserve the record for appeal (trial counsels) and failure to properly argue the appeal issues allowed the appellate court to make contrary to law rulings in denying the appeal. . . .

(Doc. 3, at PAGEID#: 392, 394, 395, 396, 407, 409, 413, 419, 422, 424, 427, 429, 450).

Respondent has filed a motion to dismiss the petition.  (Doc. 18).  Respondent contends that the petition is subject to dismissal with prejudice because it is barred from review by the applicable one-year statute of limitations governing federal habeas actions by state prisoners, which is set forth in 28 U.S.C. § 2244(d).  (*Id.*).  Petitioner has filed a brief opposing the motion to dismiss.  (Doc. 31).

## II.  RESPONDENT'S MOTION TO DISMISS (DOC. 18) SHOULD BE GRANTED BECAUSE ANY TIMELY CLAIM ALLEGED IN GROUND FOURTEEN IS NOT COGNIZABLE AND PETITIONER'S REMAINING CLAIMS ARE TIME BARRED

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could

have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the

pendency of a properly filed application for state post-conviction relief or other collateral review.

As an initial matter, to the extent that petitioner alleges claims in Ground Fourteen

challenging the Ohio Court of Appeals' and Ohio Supreme Court's rulings on pleadings that he

filed in 2013 and 2014 with those courts, the undersigned finds that those claims are not time-

barred. However, such claims do not constitute cognizable grounds for federal habeas relief. To

the extent that petitioner challenges errors that occurred in the appeal from the denial of his post-

conviction petition, the Sixth Circuit has held that "habeas corpus is not the proper means by

which prisoners should challenge errors or deficiencies in state post-conviction proceedings."

*Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (citing *Kirby v. Dutton*, 794 F.2d 245 (6th

Cir. 1986)); *see also Roe v. Baker*, 316 F.3d 557, 570-71 (6th Cir. 2003) (holding that the habeas

petitioner's claim that he was "deprived . . . of a full and fair hearing in the appellate review of his

post-conviction claims" was not a cognizable ground for federal habeas relief). Federal habeas

review is not available to attack the legality of post-conviction proceedings because such

proceedings are not related to a petitioner's detention. *Kirby*, 794 F.2d at 247-48; *see also Cress

v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007); *Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002).

Similarly, federal habeas review is not available to the extent that petitioner attacks the

correctness of the Ohio Court of Appeals' rulings on his belated motions for reconsideration and

reopening of the direct appeal and the Ohio Supreme Court's refusal to hear appeals from those

rulings, or the Ohio Supreme Court's denial of his motion for delayed appeal. *Cf. Fikes v.

Warden, Warren Corr. Inst.*, No. 1:10cv21, 2011 WL 7168647, at *13 (S.D. Ohio May 16, 2011)

21

(Litkovitz, M.J.) (and cases cited therein) (holding that petitioner's claim "that the Ohio Court of Appeals denied him his constitutional rights by denying his Rule 26(B) application" was not a cognizable ground for federal habeas relief because the Rule 26(B) application was a "collateral proceeding" not related to the petitioner's detention), *adopted*, 2012 WL 404768, at *2, *5 (S.D. Ohio Feb. 8, 2012) (Spiegel, J.); *see also Smith v. Ohio Dep't of Rehab. & Corr.,* 331 F. Supp.2d 605, 622 (N.D. Ohio 2004) (holding that claims of error by the Ohio Court of Appeals in denying a delayed application to reopen the appeal and by the Ohio Supreme Court in denying leave to file a delayed appeal "lie[] beyond the scope of federal habeas review" and are "not cognizable"); *Raleigh v. Warden, London Corr. Inst.*, No. 1:12cv211, 2013 WL 3934423, at *3 (S.D. Ohio July 30, 2013) (Bowman, M.J.) (and cases cited therein) ("whether or not the Ohio Supreme Court properly denied petitioner's motion for delayed appeal under state law is not an issue for this Court on habeas review"), *adopted*, 2014 WL 2871324 (S.D. Ohio June 24, 2014) (Barrett, J.); *Espinal v. Warden, Noble Corr. Inst.*, 2007 WL 1288175, at*1, *11 (S.D. Ohio May 1, 2007) (Dlott, J.; Hogan, M.J.) (holding that "[b]ecause constitutional concerns were not triggered by the Supreme Court of Ohio's denial of a delayed discretionary appeal," the petitioner had not stated a cognizable ground for federal habeas relief).

With respect to petitioner's remaining claims of error that allegedly occurred during the trial and on direct appeal prior to his resentencing on March 15, 2011 in accordance with the Ohio Court of Appeals' September 20, 2010 direct appeal decision, the Court must first determine which limitations provision contained in 28 U.S.C. § 2244(d)(1) applies.  It is clear from the record that § 2244(d)(1) (C) is inapplicable because petitioner has not asserted a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to

cases on collateral review.  In addition, § 2244(d)(1) (D) does not apply because it is clear from the numerous *pro se* pleadings that petitioner filed in the underlying state court proceedings that he was well aware of the factual bases for his claims by the time he was resentenced.  *Cf. Pugh v. Sheldon*, No. 1:10cv1648, 2012 WL 2533405, at *2-3 (N.D. Ohio June 29, 2012) (in a case where the petitioner argued that § 2244(d)(1)(D) applied because of later recantation testimony, the court reasoned that the factual predicate of the petitioner's claim of actual innocence "would have always been known" to the petitioner and, therefore, the petitioner did not exercise due diligence when years later he obtained recantation affidavits from his ex-wife, son and victim daughter).

It is respondent's position that petitioner's claims are governed by the one-year statute of limitations set forth in § 2244(d)(1)(A), which began to run when the thirty-day period expired for timely appealing the March 15, 2011 resentencing entry.  (*See* Doc. 18, p. 32, at PAGEID#: 2175).  Petitioner has suggested, however, that § 2244(d)(1)(B) applies because an impediment to filing was created by state prison officials who, in violation of his constitutional rights, prevented him from meeting court filing deadlines.  However, upon review of the entire record, it is clear that the only time petitioner was arguably prevented from filing timely pleadings was in the underlying state court proceedings, *before* his conviction became final for statute of limitations purposes, when he was confined in "the hole" at PCI from December 25, 2010 to January 21 or 22, 2011 on disciplinary charges that were later determined to be unfounded.  (*See* Doc. 16, at PAGEID#: 430, 1132, 1137, 1161).[8]  Plaintiff has claimed that after his release from the

---

[8] It is noted, however, that a prison official stated in a response to one of petitioner's complaints about missing the deadlines for filing an application for reopening of his direct appeal, as well as a brief on appeal from the denial of his state post-conviction petition, that "[a]cess to legal items while in segregation is permitted."  (*See* Doc. 16, at PAGEID#: 1136).

disciplinary confinement in January 2011, he was still prevented from pursuing his case by prison officials at PCI and LeCI because they placed unreasonable limits on his access to the prison law library and legal materials.  However, the undersigned is not persuaded by the argument because it is clear from the record of numerous letters, complaints and grievances that petitioner was able to prepare and submit to prison officials and others during the relevant time period that he was not prevented by any of the claimed restrictions from asserting his First Amendment rights, which could have also included the filing of a habeas petition.  (*See id.*, at PAGEID#: 1082, 1132, 1137, 1140, 1147, 1148, 1155, 1157, 1163, 1166, 1181, 1192, 1211, 1230, 1238, 1247, 1249, 1257, 1275, 1277, 1300, 1325).  Therefore, the undersigned concludes, as respondent has contended, that the statute of limitations set forth in § 2244(d)(1)(A) applies in this case.

As respondent has argued, petitioner's conviction did not become "final" within the meaning of § 2244(d)(1)(A) until April 14, 2011, when the 30-day period expired for filing a timely appeal to the Ohio Court of Appeals from the trial court's March 15, 2011 entry vacating petitioner's conviction and 5-year prison sentence for aggravated drug trafficking.  (*See* Doc. 18, p. 32, at PAGEID#: 2175); *see also* Ohio R. App. P. 4(A).  The statute of limitations commenced running on April 15, 2011, one day after petitioner's conviction became final within the meaning of § 2244(d)(1)(A), *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later on April 15, 2012 absent application of statutory or equitable tolling principles.

During the one-year limitations period that began on April 15, 2011, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review.  *See* 28 U.S.C. §

24

2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Id.* In this case, the one-year statute of limitations had expired over eleven months before petitioner made the initial attempt in March 2013 to obtain further appellate court review of his conviction and sentence in the direct review and post-conviction appeal proceedings and by way of a delayed appeal to the Ohio Supreme Court. Therefore, none of those later pleadings served to statutorily toll the limitations period beyond its expiration in April 2012.

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland,* 560 U.S. at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to

25

apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner contends that he is entitled to equitable tolling of the limitations period because he was prevented from filing a timely petition due to various disciplinary confinements and restrictions placed on his access to the prison law library and legal material while he was incarcerated at PCI and LeCI. However, as discussed above, the only time petitioner has shown he was arguably prevented from meeting a court filing deadline was when he was in disciplinary confinement at PCI from December 25, 2010 through January 21 or 22, 2011, *before* the one-year statute of limitations had even begun to run for the purpose of commencing a federal habeas action. Furthermore, petitioner's contention that he was prevented from filing a petition in the one-year period between April 15, 2011 and April 15, 2012 is belied by the fact that he was able to prepare and submit numerous lengthy letters, complaints and grievances to state prison officials and others during that same time frame. Because petitioner has not demonstrated that an "extraordinary circumstance" prevented him from filing a timely federal habeas petition within a year after his conviction and sentence became final in April 2011, he is not entitled to equitable tolling of the statute of limitations.

Finally, petitioner has not shown that the procedural bar to review should be excused based on a colorable showing of actual innocence. The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" a statute of limitations bar to review. *McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1928 (2013). The

26

Supreme Court has made it clear, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (pointing out that the *Schlup* actual-innocence standard is "demanding and permits review only in the extraordinary case") (internal citation and quotation marks omitted).  To establish a credible gateway claim of actual innocence, the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008).  In evaluating "new evidence" presented by a petitioner, the court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332; *see also Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 612-13 (6th Cir. 2013) (quoting *McQuiggin*, 133 S.Ct. at 1935) ("Although a petitioner who asserts a convincing actual-innocence claim does not have to 'prove diligence to cross a federal court's threshold,' timing remains 'a factor relevant in evaluating the reliability of a petitioner's proof of innocence.'").  Moreover, in assessing whether the petitioner has established a convincing claim of actual innocence sufficient to overcome the procedural bar to review, the court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would  necessarily be admitted under rules of admissibility that would govern at trial." *House*, 547 U.S. at 538 (internal citation and quotation marks omitted).

　　The undersigned has thoroughly reviewed the entire record, including the exhibits that

petitioner was permitted by separate Order issued this date to add to the record, and finds that petitioner has not established a colorable claim of actual innocence. Petitioner's own self-serving protestations of innocence are "inherently suspect" and unreliable. *Cf. Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012); *see also Betts v. Tibbals,* No. 1:11cv01107, 2014 WL 4794530, at *48 (N.D. Ohio Sept. 24, 2014) (finding the petitioner's own self-serving affidavit to be lacking in credibility and reliability), *appeal filed*, Case No. 14-4039 (6th Cir. Oct. 22, 2014).

The strongest evidence that petitioner has proffered in support of his actual-innocence claim is an undated recantation affidavit signed by his daughter, Abby Smith, which was filed by petitioner on February 13, 2015 as an attachment to a motion to expand the record, and an undated affidavit signed by his son, Wesley Smith, which was filed by petitioner on July 14, 2015 as an attachment to another motion to expand the record. (*See* Doc. 22; Doc. 32, at PAGEID#: 2726-35).[9] The affidavits are suspect. First, it appears that petitioner drafted the documents for his children's signatures. The pleadings contain the same verbose, rambling style of writing found in petitioner's numerous lengthy submissions filed in both this action and the underlying state-court proceedings and also appear to have been typed on the same typewriter used by petitioner in drafting pleadings filed with this Court. In any event, even assuming that petitioner's daughter and son wrote their affidavits submitted several years after petitioner's trial and conviction, they still lack credibility and fall "far short of the sort of extraordinary showing—like

---

[9] It is noted that Wesley Smith's affidavit is less concerning than Abby Smith's affidavit recanting her prior statements to the police and trial testimony incriminating petitioner in the crimes. It appears from the record that Wesley Smith, who was 17 years old at the time of the crimes and was removed from his parents' custody as a result of that incident, refused to provide any incriminating information about his father to the police and testified at trial that petitioner "was unconnected with any drug trafficking and that Abby was responsible for any drug trafficking in room 136 of the Greystone Motel." (*See* Doc. 16, Ex. 35, p. 10, at PAGEID#: 929; Doc. 32, at PAGEID#: 2706). His affidavit, therefore, only adds "new" evidence to the extent that it contains more details supporting his prior trial testimony.

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—

needed to establish [the petitioner's] actual innocence." *See Freeman*, 483 F. App'x at 60

(finding that the credibility of the petitioner's ex-girlfriend and mother of his child was "suspect"

and holding that her alibi affidavit submitted years after the petitioner's trial was insufficient to

establish a credible actual-innocence claim); *see also Milton v. Sec'y, Dep't of Corr.*, 347 F.

App'x 528, 531-32 (11th Cir. 2009) (holding that the "threshold showing of actual innocence"

was not met by affidavits, found to be unreliable, that were submitted by the petitioner's friends

and family members several years after the petitioner's trial); *Kalak v. Berghuis*, No.

2:11cv12476, 2015 WL 2169785, at *8 (E.D. Mich. May 8, 2015) ("Affidavits from family

members that are created after trial are not sufficiently reliable evidence to support a finding of

actual innocence."); *Haynes v. Bergh*, No. 13-10358, 2014 WL 6871263, at *12 (E.D. Mich. Dec.

5, 2014) (quoting *Matthews v. Ishee*, 486 F.3d 883, 895 (6th Cir. 2007) (internal citation and

quotation marks omitted), and *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J.,

concurring) ) (holding that the petitioner had failed to demonstrate a credible claim of actual

innocence "under the demanding *Schlup* standard" given that "recanting affidavits are always

viewed with 'extreme suspicion'" and "new statements from witnesses years after the crime are

inherently suspect" and "are to be viewed with a 'degree of skepticism'"), *appeal filed*, No. 14-

2631 (6th Cir. Dec. 31, 2014); *Harris v. Smith*, No. 2:12cv14210, 2013 WL 3873168, at *5 (E.D.

Mich. July 25, 2013) ("Long delayed statements are viewed with extreme suspicion."); *Gray v.

Hudson*, No. 1:06cv1308, 2008 WL 1995362, at *21 (N.D. Ohio May 5, 2008) (and numerous

cases cited therein) (holding that "the inherent suspiciousness of the recanting affidavits [of

prosecution witnesses] coupled with their late filing more than three years after conviction and the

29

lack of explanation as to why they were filed so late" failed to demonstrate "new reliable evidence" of the petitioner's actual innocence).  In contrast, James Clark and Christopher Magee, two other eyewitnesses to the events giving rise to the criminal charges, provided incriminating testimony against petitioner which corroborated Abby Smith's initial testimony both to the police and at trial implicating petitioner in the crimes.  (*See* Doc. 16, Ex. 83, at PAGEID#: 1892-1939).

Therefore, upon review of the entire record, the undersigned is convinced that petitioner's submissions are insufficient to establish a credible claim of actual innocence.

Accordingly, in sum, the undersigned concludes that any timely claim raised by petitioner in Ground Fourteen of the petition challenging the Ohio appellate courts' rulings on motions filed by him in 2013 is not cognizable in this federal habeas proceeding.  Petitioner's remaining claims for relief are barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254.  Under the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), the statute began to run on April 15, 2011, one day after petitioner's  conviction and sentence became final, and expired one year later on April 15, 2012, over two years before petitioner initiated the instant action on August 25, 2014.  Neither statutory nor equitable tolling principles apply to further extend the limitations period or otherwise avoid the statute of limitations bar to review in this case.  Therefore, respondent's motion to dismiss (Doc. 18) should be **GRANTED**.

### IT IS THEREFORE RECOMMENDED THAT:

1.  Respondent's motion to dismiss (Doc. 18) be **GRANTED**, and petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DISMISSED** with prejudice.

2.  A certificate of appealability should not issue with respect to any of petitioner's time-

barred claims because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling that such claims are subject to dismissal on statute of limitations grounds.[10]  A certificate of appealability should also not issue with respect to any claim alleged in Ground Fourteen of the petition that is not procedurally barred from review in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See id.* at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

---

[10] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief.  *See Slack,* 529 U.S. at 484.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

HARRY R. SMITH,
      Petitioner,

      vs

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:14-cv-677

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc